UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MICHAEL ANANIA<br>    Plaintiff | CIVIL NO. 3:14-CV-00472(JAM) |
| v. | |
| UNIVERSITY OF CONNECTICUT, and<br>UNIVERSITY OF CONNECTICUT<br>POLICE DEPARTMENT<br>    Defendants | August 18, 2014 |

## AMENDED COMPLAINT

Plaintiff, by and through his counsel, alleges the following upon information and belief:

### PRELIMINARY STATEMENT

1. This case arises from the illegal and unconstitutional actions of the Defendant, the University of Connecticut which, through its administration and staff in an effort to deal with a graduate student's compliant about the Plaintiff- who was a graduate professor in the Defendant University's theater arts program- violated the Plaintiff's first and fifth amendment rights under the Constitution of the United States of America. The Plaintiff complains that the University, in derivation of the Plaintiff's fifth amendment due process rights and first amendment right to freedom of speech, launched a sham investigation of the allegations against him in which the Plaintiff was prevented from meaningfully defending himself under threats that any speech he made to any person about the proceedings would be deemed by the University of Connecticut to be an illegal act of retaliation against the complaining student. This investigation was designed to and did in fact result in a finding of guilt so that the University could terminate the Plaintiff's employment and make an example out of him in order that it may avoid additional embarrassment and liability to that which it already faced in the wake of an ongoing and sensational scandal involving allegations that the same Defendant had covered up numerous illegal sexual acts of another of its professors as well as that it had discouraged the reporting and investigation of on-campus sexual assaults. The University violated the law and the Plaintiff's

rights in order to illustrate that the University had adopted a new more proactive approach to dealing with allegations against its staff. In order to keep the University's mistreatment of the Plaintiff under wraps, the University used its police force to illegally ban the Plaintiff from the University's public grounds by serving on him an necessary and unfounded "Notice of Trespass" in a further attempt to prevent and discourage the Plaintiff from exercising his first amendment rights to speak out about the situation. The Defendant University continued violating the Plaintiff's due process rights by not having a procedure in place for an appeal of the Notice of Trespass- or else making one up in an ad hoc manner when the Plaintiff requested an appeal- and then by intentionally destroying public records of that appeal that otherwise would have served as exculpatory evidence for the Plaintiff in this or another lawsuit over the University's illegal acts in violation of the Plaintiff's fifth amendment rights and Connecticut's Freedom of Information laws Title 1, § 240(b) of the Connecticut General Statutes.

## JURISDICTION AND VENUE

2. The Court has federal question jurisdiction over this claim pursuant to 42 U.S.C. §1983.

3. Venue is proper in the United States District Court, pursuant to 28 U.S.C. §1391 (a), (b) and (c), because Defendants are located in Connecticut, because a substantial part of the events or omissions giving rise to the claim occurred in Connecticut, and because the Freedom of Information Act violation alleged herein occurred in this state.

## PARTIES

4. Plaintiff Michael Anania is a United States Citizen and an individual who, at all times relevant to this complaint, was residing at 310 Mansfield City Road in Mansfield, Connecticut and was a resident of the State of Connecticut as defined in 28 U.S.C. § 1391(c)(1) during all times relevant to this complaint.

5. Defendant, The University of Connecticut, is a public, State entity located in Storrs, Connecticut. It has numerous buildings and departments on its campus, including the University of

Connecticut Police Department, which operates under the banner of the University of Connecticut. The President of the University maintains an office at 352 Mansfield Road, Unit 1048 Storrs, CT 06269-1048.

## FACTS

6. On March 19, 2013 a complaint was made by a graduate student at The University of Connecticut (" the University") against the Plaintiff, Michael Anania, who was then a professor at the University.

7. The compliant against the Plaintiff was an allegation that the Plaintiff created a hostile academic environment for the complainant by allowing and participating in inappropriate sexual banter during class and group work time.

8. At the same time, a sensational scandal involving the University's mishandling of another much more serious case of inappropriate sexual conduct, concerning Bob Miller, was unfolding in the national media.

9. On March 20, 2013 the complaint was brought to the attention of Michael Eagan, the Director of the Office of Faculty and Staff Labor Relations at the University.

10. The Plaintiff was not notified of the investigation until April 1, 2013.

11. On April 9, 2013 Nancy Myers, J.D., of the University's Office of Diversity and Equity wrote to the Plaintiff warning the Plaintiff of the consequences of retaliating against the complainant.

12. That letter specifically stated that the University would consider it retaliation if the Plaintiff contacted any student (current or former) or any colleague regarding the matter, or disseminating any information about the complaint to any person. Thus, depriving the Plaintiff of any meaningful opportunity to mount or present a defense because he could gather no witnesses, could consult with no

counsel, and could build no case for fear of those efforts being considered retaliation against the complainant.

13. Though his employment was at stake, in light of the stern warning in the April 9, 2013 letter from Nancy Myers, the Plaintiff was forced to maintain his silence and allow the investigation against him to play out with his presenting virtually no defense.

14. On June 11, 2013, the University's Office of Diversity and Equity wrote to the Plaintiff to tell him that the investigation had concluded and that he had been found to have violated the University's Policy Statement on Harassment.

15. By letter dated July 16, 2013 the Plaintiff was informed by Brid Grant, the dean of the University's School of Fine Arts, that his contract would not be renewed and that he was no longer welcome on campus except that he would be allowed to return once to collect his belongings while being accompanied by a University staff member.

16. In the same letter, Dean Brid Grant informed the Plaintiff that he was being considered to have retaliated against the complaining student by having 1. approached the student in order to "tell her [he] was sorry and would not retaliate against her" and 2. for having "discussed the [Office of Diversity and Equity] investigation and report with other students, faculty and staff in the Department."

17. On July 18, 2013 at 12:37 pm Michael Eagan, wrote an E-mail to various members of the University staff including Dean Brid Grant, Ralph Urban, an Assistant Attorney General to the State of Connecticut, Kelly Bannister, Richard Orr, general counsel to the University, Elizabeth Conklin, Sally Reis, and Mun Choi, the provost of the University stating that the Plaintiff was "discussing his employment situation" with colleagues.

18. Sometime on July 19, 2013 Lieutenant Shortell of the University of Connecticut Police Department attended a meeting of the "Employees of Concern" group. He did not write a report about having attended this meeting until four days later.

19. On July 19, 2013 at 5:59 pm Michael Eagan forwarded to Lieutenant Shortell and Captain Vargas of the University of Connecticut Police Department the aforementioned July 18, 2013 E-mail stating that the Plaintiff was discussing "his employment situation" with colleagues.

20. On July 19, 2013 at 6:16 pm Captain Vargas forwarded to Michael Eagan a copy of an E-mail she had sent to Lieutenant Shortell stating that "obviously, openly discussing his [The Plaintiff's] dismissal is not a threat" but that Shortell was to "check the normal channels for background" so that the Police Department could "make a recommendation about the trespass notice".

21. Lieutenant Shortell performed the requested background checks which produced no information that might suggest that the Plaintiff was a threat to security at the University.

22. On July 22, 2013 Michael Eagan wrote a letter to the Plaintiff which was "cc'd" to Mun Choi, Brid Grant, Richard Orr, and Ralph Urban- all of whom had been included on the aforementioned July 18, 2013 E-mail from the same author on the same subject- but this time the communication was in paper format and Peter Gguyan, a representative of the Plaintiff's worker's union who had not been previously included, was included as a recipient. This letter contained an accusation that certain behavior of the Plaintiff had been considered retaliatory, but without specification except to refer to the Plaintiff's having "continue[d] to contact current and former students and faculty about these issues" and suggesting that on July 16, 2013 disciplinary action had been taken against the Plaintiff for his failure to heed the warnings not to engage in retaliatory behavior.

23. Then, at 3:45 pm on July 22, 2013, Lieutenant Shortell wrote an E-mail to Captain Vargas stating that the reports that the Plaintiff's complaining about his termination "should be enough for the no trespass order".

24. Then, at 5:32 on July 22, 2013 pm Captain Vargas responded to Lieutenant Shortell, via E-mail, ordering him to issue a Notice of Trespass upon the Plaintiff and a Notice of Trespass was issued and served on the Plaintiff at the Plaintiff's off-campus home that evening.

25. On July 23, 2013, the day after the Notice of Trespass was served, Lieutenant Shortell wrote a report detailing his having attended the Employees of Concern meeting four days earlier, that group's having had asked him to look into the Plaintiff's background and for the UCONN Police to issue a Notice of Trespass on the Plaintiff, that there were no reports made at that meeting nor any evidence evidence presented to him at that time or later that the Plaintiff had made any threats, and that all the Plaintiff seemed to have done was complained about his termination from the University, and that members of the University police department's patrol division had left the campus and served the Notice of Trespass on the Plaintiff at 7:08 pm on July 22, 2013 to the Plaintiff, at the Plaintiff's home in Mansfield, Connecticut.

26. The Notice of Trespass contained no allegation of the specific conduct that resulted in the banning of the Plaintiff from the University grounds.

27. The Notice of Trespass contained virtually no information as to how to appeal it except that it included a telephone number that went to the University Police Department.

28. Upon calling this number to inquire about the procedure to appeal the Notice to Quit, the Plaintiff's counsel was asked if the Notice of Trespass had been issued to a student or a professor, and when he answered that it had been issued to a professor, the Plaintiff's counsel was told to hang up and call the University's Human Resources Department.

29. The Plaintiff is the only professor in University history to have been issued a Notice of Trespass.

30. An appeal hearing was finally scheduled for October 2, 2013.

31. On October 2, 2013 the Plaintiff and his counsel met at the University of Connecticut Police Department with Captains Sleeman and LeChance and the four conferenced informally in a closed room within the University Police Department with no other persons present. This conference constituted the appeal hearing.

32. At the beginning of this meeting, Captain Sleeman produced and switched "on" a digital voice recorder, at which time the Plaintiff's counsel asked if the recording of the appeal hearing was standard procedure to which Captain Sleeman answered in the affirmative and the recording device ran throughout the duration of the meeting.

33. After the October 2, 2013 appeal hearing, the Plaintiff's counsel immediately returned to his office and before the end of that day made a request to Liz Vitullo of the University of Connecticut Office of Audit, Compliance and Ethics, pursuant to the Freedom of Information Act, for a copy of the appeal hearing recording.

34. On October 9, 2013 Captain Sleeman wrote to the Plaintiff to inform him of the results of the appeal; that the Notice of Trespass had been lifted and that the Plaintiff was "free to utilize the University with all the rights of a public citizen".

35. On October 29, 2013 the Plaintiff's counsel was informed by Liz Vitullo that the officer who had made the voice recording of the October 2, 2013 appeal hearing had destroyed it after using it to prepare his correspondence of October 9, 2013 though destruction of those records is itself a misdemeanor violation of Title 1, section 240(b) of the Connecticut General Statutes.

### COUNT ONE

**First amendment violation alleged against defendant University**

36. Paragraphs 1-35 of this complaint are hereby incorporated into this count as if fully set forth herein.

37. The University of Connecticut violated the Plaintiff's first amendment rights to freedom of speech in violation of 42 U.S.C. §1983 by unreasonably and/or unnecessarily restricting the Plaintiff's free speech rights while conducting an official investigation which investigation placed the Plaintiff's job at stake which resulted in the Plaintiff losing standing in the community, the esteem of his colleagues, and income from a contract that otherwise would have been renewed the following year

and years to come.

## COUNT TWO

**First amendment violation alleged against defendant University**

38. Paragraphs 1-37 of this complaint are hereby incorporated into this count as if fully set forth herein.

39. The University of Connecticut violated the Plaintiff's first amendment rights to freedom of speech in violation of 42 U.S.C. §1983 when it unreasonably and/or unnecessarily used its police force to ban the Plaintiff from the University of Connecticut grounds for having spoken to people about the actions being taken against him by the University which resulted in the Plaintiff losing standing in the community, the esteem of his colleagues, and income from a contract that otherwise would have been renewed the following year and years to come.

## COUNT THREE

**Fifth amendment due process violation alleged against defendant University**

40. Paragraphs 1-39 of this complaint are hereby incorporated into this count as if fully set forth herein.

41. The University of Connecticut violated the Plaintiff's fifth amendment due process rights in violation of 42 U.S.C. §1983 when, by design, it conducted an official investigation into the Plaintiff's conduct- which investigation placed the Plaintiff's job at stake- without the Plaintiff being afforded a reasonable or meaningful opportunity to present a defense which resulted in the Plaintiff losing standing in the community, the esteem of his colleagues, and income from a contract that otherwise would have been renewed the following year and years to come.

## COUNT FOUR

**Fifth amendment due process violation alleged against defendant University**

42. Paragraphs 1-41 of this complaint are hereby incorporated into this count as if fully set forth herein.

43. The University of Connecticut violated the Plaintiff's fifth amendment due process rights in violation of 42 U.S.C. §1983 when it unreasonably and/or unnecessarily destroyed records of the Plaintiff's of the appeal of the Notice of Trespass issued against him, thereby depriving him of important evidence he might otherwise use to prosecute this or another lawsuit and which resulted in the Plaintiff losing standing in the community, the esteem of his colleagues, and income from a contract that otherwise would have been renewed the following year and years to come.

**Wherefore**, Plaintiff claims against the Defendant University of Connecticut damages for lost earnings, loss of earning capacity, out-of-pocket expenses, impairment of reputation, mental anguish, emotional distress and personal humiliation that the plaintiff suffered as a result of the conduct by the defendants depriving him of his civil rights as well as nominal damages for the same pursuant to 42 U.S.C. §1983.

**PLAINTIFF, MICHAEL ANANIA**

By: _____

Joseph Robert Sastre ct28621
The Law Office Of Joseph R. Sastre, LLC
67 Chestnut Street
Bristol, CT 06010
Tel: 860-261-5643
Fax: 860-261-5786
E-mail: joseph.sastre@gmail.com

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing will be provided to the Defendants counsel of record through the court's electronic docket system.

_____
Joseph Robert Sastre